UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | NO. 5:25-CR-00127-GFVT-MAS-8 |
| | ) | |
| QUINCINO LAMONT WAIDE, JR., | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM OPINION & ORDER**

Prior to Defendant Quincion Lamont Waide's indictment in this case, the Court considered his eligibility for release in *United States v. Waide*, 5:25-CR-00073-GFVT-MAS ("the firearm case"). In that case, the Court asked whether Waide's association with the dangerous street gang Hot Boyz was sufficient to warrant his pretrial detention in that case. For reasons detailed in the Court's Memorandum Opinion and Order in the firearm case, the Court found that Waide's criminal associations, criminal history, and the pending charge required detention under the Bail Reform Act. Now, Waide has served his sentence in the firearm case, and the United States again asks that Waide remain in custody for this case, and Waide requests the Court revisit the facts of the case and reach the opposite conclusion in this case. For the reasons that follow, the Court remains convinced the Bail Reform Act mandates Waide's pretrial detention.

## I.    <u>ANALYSIS</u>

The United States moved for detention in this matter while Waid was detained and awaiting trial in the firearm case.  At that time, Waide deferred his hearing on detention in this case until resolution of the firearm case.  A grand jury indicted Waide in this case for being an accessory after the fact to the murder for hire of federal witness Kristopher Lewis.  [DE 86].

Judge Van Tatenhove sentenced Waide to 15 months imprisonment in the firearm case on January 13, 2026, and Waide completed that sentence on June 9, 2026.  [DE 261].  As he was eligible for release on supervision, Waide moved to have a detention decision made in this case.  [DE 261].  The United States renewed its motion for detention.  The Court conducted a detention hearing on July 2, 2026.  [DE 269].

The Court afforded both sides all procedural rights outlined in the Bail Reform Act ("BRA").  The United States bears the burden to prove a defendant should be detained pretrial.  Detention premised on nonappearance requires preponderant evidence.  *See, e.g., United States v. Patriarca*, 948 F.2d 789, 793 (1st Cir. 1991); *United States v. Curry*, No. 6:06-CR-82-DCR, 2006 WL 2037406, at *6 (E.D. Ky. Jul. 18, 2006).  Danger-based detention, however, demands clear and convincing evidence that no combination of conditions will reasonably ensure community safety.  18 U.S.C. § 3142(f).  The analyses are distinct.  Conditions that sufficiently target nonappearance risk may not adequately address danger potential.  *See United States v. Mercedes*, 254 F.3d 433, 436-37 (2nd Cir. 2001).  Further, condition effectiveness inherently hinges on a defendant's predicted good faith compliance.  *See United States*

*v. Tortora*, 922 F.2d 880, 887 (1st Cir. 1990) (characterizing predicted compliance as critical release component); *United States v. Hir*, 517 F.3d 1081, 1092 (9th Cir. 2008) (noting the "critical flaw" in a set of proposed release conditions: "In order to be effective, they depend on [the defendant's] good faith compliance."); *id.* at 1093 n.13 (observing that, barring a "replica detention facilit[y]," the success of any condition combination necessarily "hinge[s] on [the defendant's] good faith compliance").

Evidence rules do not apply in the detention hearing context. 18 U.S.C. § 3142(f). The key is simply evidentiary reliability and accuracy. *See, e.g.*, *United States v. Webb*, 149 F.3d 1185 (Table), No. 98-1291, 1998 WL 381686, at *1 (6th Cir. June 22, 1998). The Court properly considers a wide range of proof. The nature and quality of proof, though, impacts its probative value and weight in the detention calculus.

The United States requested that the Court take judicial notice of the copious proof introduced at the detention hearing in the firearm case. Waide did not object. Thus, what follows is analysis based on the facts developed at the May 27, 2025, hearing in the firearms case [5:25-CR-00073-GFVT-MAS, DE 6, 7, 8] and the new facts introduced through testimony and exhibits at the detention hearing in this case on July 2, 2026. The Court previously set forth exhaustive facts regarding the background of the Hot Boyz criminal activity and Waide's involvement therein. The Court relies on its prior recitation of these facts [*see* 5:25-CR-00073-GFVT-MAS, DE 9; 5:25-CR-00127-GFVT-MAS, DE 187, 154, and 76] and only partially reiterates them herein.

A.    WAIDE'S DANGER TO THE COMMUNITY

The BRA's § 3142(g) factors drive the Court's danger analysis.  Specifically, the Court must consider the history and characteristics of the defendant, the nature and circumstances of the offense charged, the weight of the evidence against the person, and the nature and seriousness of the danger to any person or the community that would be posed by the person's release.  *See* 18 U.S.C. § 3142(g).

1.    **Waide's History and Characteristics**

The Court must consider many aspects of Waide's background in making the decision to release or detain him.  Specifically, the BRA requires courts to "take into account the available information concerning— [ . . . ] the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and (B) whether, at the time of the current offense or arrest, the person was on probation[.]"  18 U.S.C. § 3142(g)(3).

Waide is a 25-year-old Lexington, Kentucky, native.  Waide has lived in the Lexington, Kentucky, area his entire life.  Both of Waide's parents reside in Lexington, as do his four children and extended family.  [Pretrial Services Report at 1-2].  Waide's mother, LaSha Haddix, testified on Waide's behalf the detention hearing.  Haddix stated that Waide lived with her prior to his incarceration and could return to live with her if he is released.  Haddix assured the Court she is willing and able to ensure Waide follows any conditions of release and would notify USPO if he

violated conditions of release.  Haddix testified that Waide is an involved father and that Hitachi, his former employer, was willing to rehire him if released.

Waide's criminal history has been exacerbated since the Court made its 2025 decision to detain him in the firearms case.  At that time, he had only a misdemeanor assault conviction that arose from February 2022 incident in which Waide pushed a then-girlfriend to the floor, strangled her, and hit her in the face, all while she was holding their infant in her arms.  The baby hit his head during the assault.  Attendant to that assault conviction, Waide was also convicted of attempted intimidation of a participant in the legal process and trafficking in marijuana, less than eight ounces. [Pretrial Services Report at 4].  Waide also had an emergency protective order against him from August 1, 2021, until February 3, 2022.  It appears the petitioner for the emergency protective order was the victim in the assault case that transpired a few weeks after the protective order expired.  [Pretrial Services Report at 4.].

Waide's first felony charges (in the firearm case) stemmed from an incident that occurred when law enforcement came to Waide's residence to execute a search warrant on his cell phone related to the Lewis murder investigation.  According to Special Agent Isaac Robison, the Complaint in 5:25-MJ-5253-MAS, and the Pretrial Services Report, law enforcement arrived and found Waide outside his girlfriend's apartment walking a dog.  When law enforcement announced their presence, Waide rushed back inside the apartment, holding his waistband area in a way that suggested to the officers he was holding a firearm.  Officers eventually obtained a search warrant for the apartment, and lcoated several firearms and ammunition. One

of those firearms, a Glock 21, matched shell casings from inside a Chevy Cruz that Waide was suspected to have been driving during a shooting on October 26, 2024, between the Cruz and a Lexus that discharged many rounds of ammunition in a residential neighborhood.  Based on all the evidence presented during the May 27, 2025, detention hearing, the Court was convinced it is extremely likely that the Glock 21 was used by the driver of the Cruz on October 26, 2024, and that Waide was the likely driver of the Cruz.  On September 8, 2025, Waide pleaded guilty to knowingly possessing a firearm and ammunition after a conviction for a misdemeanor crime of domestic violence (the February 2022 domestic violence offense described above).  [DE 35].  Thus, unlike the first detention determination, Waide now has a federal firearm felony in his criminal history, significantly increasing his dangerousness.

Robison testified that since the May 2025 detention hearing, law enforcement has named Waide as a validated Hot Boyz member.  There is significant evidence in the record of the firearm case of Waide's close associations with the Hot Boyz.  Waide contests he is a member of the Hot Boyz gang, however, he does not contest that he is close friends with many members of the Hot Boyz, including his codefendants in this case.

### 2.    **The Nature and Circumstances of the Offense Charged**

The United States did not present any evidence at this hearing of the nature and circumstances of the charged offense.  However, at the hearing in the firearms case, Robison testified about the allegations that ultimately became the basis for Waide's indictment in this case.

Robison detailed the murder of Kristopher Lewis and the suspected connections to the Hot Boyz gang. In 2022, Rollie Lamar and Kristopher Lewis were indicted in 5:22-CR-50-GFVT-MAS for offenses including conspiracy to distribute marijuana and conspiracy to commit money laundering. Robison testified that Lamar believed Lewis cooperated with law enforcement, leading to the arrest of Lamar. Although Lewis's cooperation did not lead to the arrest of Lamar, Lewis had, ultimately, decided to cooperate with law enforcement and was scheduled to testify at Lamar's trial. Prior to Lamar's trial, however, Lewis was murdered on October 29, 2023.

Through various investigatory means, law enforcement came to believe the Hot Boyz were responsible for Lewis's murder, likely at the direction of Lamar. Specifically, law enforcement believes codefendants Boone, Sharp, and Dixon were at the scene of the murder. The vehicle used as the getaway car from the murder scene was known to be driven by Sharp and was later found abandoned. Robison testified that law enforcement determined Sharp began driving a Dodge Durango after the Lewis murder, and that Waide's phone location information put him in the vicinity of where the getaway vehicle was abandoned, implying that Waide facilitated the vehicle switch.

Finally, Robison discussed text messages between Dixon and Sharp, extracted from Dixon's phone, from the night of Lewis's murder. Around the time the messages were sent, Waide's cell phone was in the same location as Dixon's. In those messages, Dixon and Sharp refer to "4 of us" and state they were going to get "a band" to split,

for "250 each."  Robison interpreted this to mean Sharp, Dixon, Boone, and Waide were each getting paid for their involvement in Lewis's murder.  However, there was no overt mention of Lewis's murder in the text messages.

In the detention opinion in the firearm case, the Court noted that the testimony about Waide's possible connection to the Lewis murder did "not suggest that Waide was involved in or responsible for the Lewis murder; however, it does strongly suggest that Waide is uncomfortably close with murder suspects and a getaway car."  [DE 9 at Page ID# 31].  Now, a grand jury has reviewed the United States's allegations and determined there was probable cause to indict Waide for his involvement after the fact in the Lewis murder.

Although the allegations against Waide suggest far less culpability in Lewis's murder than his codefendants, the nature and circumstances of any involvement in the murder for hire of a federal witness portends the utmost level of dangerousness.

### 3.   **The Weight of the Evidence**

In weighing the strength of the evidence, the district court may not modify or limit the defendant's presumption of innocence.  18 U.S.C. § 3142(g).  "[T]he § 3142(g) analysis is concerned with a practical assessment of the defendant's dangerousness, rather than an adjudication of guilt for a particular offense."  *United States v. Tolbert*, 2017 WL 6003075, at *5 (E.D. Tenn. Dec. 4, 2017) (citing *Stone*, 608 F.3d at 948).

This BRA factor is somewhat duplicative of the first and third because, in considering a defendant's overall dangerousness, the Court must consider the facts of the crime alleged as well as evidence that the defendant has been dangerous in the past, such as criminal history and a history of violent behavior.  During the detention

hearing in the firearm case, the United States heavily stressed Waide's involvement in the Hot Boyz, the gang wars, and the Lewis murder as evidence of his dangerousness. The Court summarized the evidence as follows: "(1) he was involved in two shooting incidents, one of which allegedly resulted in him firing back during a dangerous high speed chase; (2) Waide generally associates and promotes individuals suspected (but not charged in) numerous murders and shootings; (3) Waide has a demonstrated history of domestic violence; (4) Waide possessed a firearm following his domestic violence conviction; and (5) there is circumstantial evidence suggesting Waide may have played a role in the murder of Kristopher Lewis." [5:25-CR-00073-GFVT-MAS, DE 9 at Page ID# 35]. Of course, at this time, reason (5) has been transformed into a grand jury indictment that he did play a role in the Lewis murder.

Considering the above facts, the nature of the crime alleged, and the communications with Hot Boyz associates during his incarceration described below, the Court determines that, even more compellingly than in May 2025, "Waide's conduct and associations lead to a conclusion of overall dangerousness." [5:25-CR-00073-GFVT-MAS, DE 9 at Page ID# 35].

**4.    The Nature and Seriousness of the Danger if Released**

The Court must weigh "the nature and seriousness of the danger to any person or the community that would be posed by the person's release."    18 U.S.C. § 3142(g)(4). The United States presented evidence during the detention hearing in the firearms case that Waide had abundant connections to gang members and gang violence. In the instant detention hearing, the United States proved that those connections are ongoing and likely pose a threat of danger to the community. The

United States's evidence proved that Waide communicated with Hot Boyz and their associates through three-way jail phone calls, messages passed through third parties, and through jail text messages. [DE 272, Gov. Ex. 4-9b]. Specifically, the United States introduced recorded jail phone calls between co-defendant Sharp's mother and Waide in which they discussed individuals who might be working as informants. [DE 272, Gov. Ex. 5a-5d]. Sharp's mother told Waide to pass on messages to other Hot Boyz incarcerated with him. The United States introduced jail text messages between Waide and various Hot Boyz associates in which Waide (1) gave directions for placing three-way telephone calls (presumably to allow two incarcerated individuals to speak in contravention of jail policy); (2) discussed individuals who might be a "worker" (i.e., a police informant); (3) discussed fighting another incarcerated individual because he was a suspected informant; and (4) directed a Hot Boyz associate to post on his social media, providing specific phrases like "fucc who aint with me" and calling others a "master splinter."[1] [DE 272, Gov. Ex. 9a and 9b]. The jail calls and text messages occurred as recently as the last week of June 2026.

While Waide sought to characterize these calls and texts as "hens clucking," the United States sought to characterize them as "fuel[ing] the flames of gang violence." The Court believes the reality lies somewhere in between. Directing a third party to maintain his social media presence, even with references to "rats" and incarceration, appears to be Waide keeping up appearances more than any real threat

---

[1] As the United States explained, "Master Splinter" is a play on words, a reference to the sewer "rat" in the Teenage Mutant Ninja Turtles cartoon. Being a "rat" is a common term for a police informant.

to the community, informants, or rival gang members.  However, Waide overtly threatens to put another inmate "on the door" which Robison testified meant Waide intended to fight the inmate because he believed the inmate was a snitch.  Waide's intent to fight the inmate is made clear by his friend's warning that, "[h]e a big nigga lmao" and Waide's response "on god lmao but ion gaf fuc all et i aint living w et."  [DE 272, Gov. Ex. 7a].  Waide also attempted make a three-way call with co-defendant Sharp, which shows both Waide's willingness to violate jail policy and his intent to continue his relationship with other Hot Boyz.  The Court agrees with the United States that the rhetoric on the jail phone calls and text messages strongly suggest Waide is willing to cause physical harm to anyone he suspects to be working with law enforcement, even while incarcerated.  Certainly, that is a frightening inference in a case centered on the murder of a government witness.  For this reason, the Court finds that Waide's release would pose a genuine risk of bodily harm to others.

The Court must address Waide's argument that his case is similar to codefendant Casey Morris's and similarly warrants release on bond conditions.  The Court agrees with Waide that Morris's alleged involvement in the Lewis murder was potentially more culpable and her knowledge of the murder, if any, occurred prior to the murder's occurrence.  The allegation that Waide was an accessory after the fact by leaving a vehicle in a particular area is a much more attenuated connection to the violence charged in this case.  However, that only addresses the "nature and circumstances of the crime" factor under § 3142(g).  The other § 3142(g) factors favored Morris's release and Waide's detention.  The Court strongly disagrees with

Waide that Morris's romantic connection to Bellomy is a more intimate connection to the Hot Boyz. Morris undoubtedly had an intimate relationship with Bellomy, was friends with other Hot Boyz, and appears to have taken steps to obstruct law enforcement's investigation of the Hot Boyz. However, unlike Waide, Morris was not a member of the Hot Boyz. Unlike Waide, Morris is not alleged to have ever engaged in violence on behalf of herself or the Hot Boyz. Unlike Waide, Morris does not have a federal felony firearm conviction on her record. Unlike Waide, Morris does not have a misdemeanor domestic violence conviction on her record. Unlike Waide, Morris has not been involved in or at the scene of multiple gang-related shootings. And unlike Waide, when the Court conducted a second detention hearing for Morris, there was no evidence she had contacted members or associates of the Hot Boyz since the case began. "In cases like this one, involving multiple defendants who are not necessarily similarly situated, the dangerousness inquiry must be an individualized one." *Stone*, 608 F.3d at 946. All in all, Morris presented a very different and more compelling case for pretrial release.

**B.   NONAPPEARANCE**

The United States did not address whether Waide is a risk of nonappearance, and, thus, did not carry its burden to prove by a preponderance of the evidence that he poses a risk of not appearing for future court dates.

**II.   CONCLUSION**

On balance, the Court finds that the BRA demands pretrial detention in this case. As to the risk of nonappearance, the United States did not demonstrate by a preponderance of the evidence that Waide is unlikely to appear as required, but did

show by clear and convincing evidence that Waide is an unmitigable danger to the community or others.

Accordingly, **IT IS ORDERED** that the United States' oral motion for detention is **GRANTED** and directs that Waide be detained pending resolution of the allegations against him.

The parties may appeal this Order under the terms of 18 U.S.C. § 3145(a).

Signed this the 11th of July, 2026.

MATTHEW A. STINNETT
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF KENTUCKY